(100 App. Div. 223)

GENCO v. REMINGTON et al.

(Supreme Court, Appellate Division, Fourth Department. January 25, 1905.)

1. CONTRACTS FOR SERVICES—CONSTRUCTION—QUESTIONS FOR JURY.

Defendants operated a canning factory; raising peas of their own, as well as using peas raised by farmers. Plaintiff entered into a written agreement with defendants to secure sufficient help to take care of defendants' pea crop, and was to receive a stated compensation per week for looking after the help, "work to commence June 1st, 1902, and to continue through pea-picking time." Plaintiff procured hands and remained with defendants during the pea-picking time, but, as defendants did not have enough peas to occupy the entire time of plaintiff and the laborers, he also, with defendants' acquiescence, superintended the picking of peas for the farmers, receiving compensation from them. This

additional labor did not interfere with the picking of defendants' crop, and nothing was said between plaintiff and defendants as to compensation for the time during which plaintiff was employed by the farmers. *Held*, that whether what plaintiff was paid by the farmers was to be applied to reduce the compensation due him from defendants was a question for the jury, and it could not be declared, as a matter of law, that it was to be so applied.

McLennan, P. J., and Williams, J., dissenting.

Appeal from Trial Term, Erie County.

Action by Joseph Genco against Herman E. Remington and another. From a judgment for defendants entered upon a nonsuit, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Wallace Thayer, for appellant.

Thomas H. Dowd and Herman E. Remington, for respondents.

SPRING, J.　The defendants operated a canning factory in South Dayton, Cattaraugus county. The plaintiff entered into a written agreement with them in March, 1902, whereby he was to secure "sufficient help in time to take care of such crops as parties of the second part may have for canning purposes." The compensation of the laborers to be secured by the plaintiff was fixed in the agreement, and also his own at "fifteen dollars per week for looking after the help, work to commence June 1st, 1902, and to continue through pea-picking time." The defendants raised peas of their own, and in addition the farmers in that vicinity also raised them for the factory. Pursuant to the agreement, the plaintiff procured about 100 hands, and they were at South Dayton by the time provided in the agreement, and remained through "pea-picking time." It also appears that defendants did not have sufficient peas to occupy the entire time of the laborers or of the plaintiff. The peas of the defendants did not all become suitable for canning at the same time. When they had no peas ready to be picked, the laborers hired by them were employed by the farmers, and the plaintiff was also engaged by the latter to superintend these laborers. The defendants acquiesced in this employment. They did not hire out the laborers or the plaintiff to the farmers, or arrange for any compensation to be paid to them. There was no work to be done for the defendants, and it was for their benefit to have the farmers employ the plaintiff and his hands, for it kept them at work, and supplied the canning factory with peas to be canned. The defendants, however, did not take any part in the transaction between the farmers and the laborers and the plaintiff. The farmers paid the plaintiff for the services he rendered them, and, upon proof of that fact, and it appearing that the amount so received by him was in excess of the sum claimed to be his due from the defendants, a nonsuit was granted.

We think the nonsuit was error. The whole purpose of the agreement with the defendants was to insure the picking of their peas. This was accomplished. All of the peas they raised were picked, and the work for the farmers was done when the defendants had no employment for the plaintiff, or for the laborers he furnished. He asked the defendants if they had any work for the help, and the defendants said

they had none, and the plaintiff thereupon informed them that he would work for the farmers. They raised no objection to this. Undoubtedly the time of the plaintiff belonged to defendants so far as it might be necessary for the performance of his contract with them. It is not claimed that he failed in his obligation to them, as to his engagement with the farmers. They did not hire out the plaintiff to them, or inform him that what he earned outside must be applied on the compensation which they had agreed to pay him, nor did they make any claim against the farmers. All this time the plaintiff kept track of the growth of the peas of the defendants, and when they were ready for the factory he caused the laborers to pick them. To comprehend the situation, it is necessary to keep in mind that the defendants had one object in view, and that was to gather their own peas in time; and, if the story of the plaintiff is to be believed, that was done. The subsequent conduct of the defendants confirms the position of the plaintiff. Peek, one of the defendants, paid his part of the agreed compensation due the plaintiff, and said Remington, the respondent, must pay the balance. Remington told the plaintiff he was "a little short. You will get your pay by and by." It was not until the plaintiff's time was up that the respondent claimed the money he received from the farmers belonged to the defendants. We think, under all the circumstances, there was at least a question of fact for the jury.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event. All concur, except McLENNAN, P. J., and WILLIAMS, J., who dissent on the ground that the plaintiff, having rendered the services sued for but once, and having been paid therefor by other parties, is not entitled to receive therefor of the defendants.